Roy PHILLIPS, and Patricia K. Colpitt, Appellees,

v.

SNUG HARBOR WATER AND GAS COMPANY, a corporation, and Ed Wright, Individually, Appellants.

No. 52086.

Court of Appeals of Oklahoma, Division No. 2.

May 1, 1979.

Rehearing Denied May 16, 1979.

Certiorari Denied July 2, 1979.

Released for Publication by Order of Court of Appeals July 5, 1979.

Earl Youree, Wagoner, for appellees.

Harry M. Crowe, Jr., Crowe & Thieman, Tulsa, for appellants.

BRIGHTMIRE, Judge.

Snug Harbor Water and Gas Co., a public utility, complains of a judgment against it compensating land developers, Roy Phillips and Patricia Colpitt, for detriment consequent to the breach of a contract to make 7¼ prepaid water connections when requested.

I

Phillips and Colpitt brought this lawsuit to recover $7,875 in damages they say they suffered as a result of the utility company's failure to perform a contract it made on May 11, 1971 promising plaintiffs it would make, upon request, 10 "transferable water . . . taps" into a two-inch water line to be extended by Snug Harbor on or before July 1, 1971 to an area of unimproved land being developed by plaintiffs. Consideration for the sale was $200 per tap or a total of $2,000 which plaintiffs paid when the contract was executed. The following October, plaintiffs paid defendant $450 more for another "2¼ prepaid connections." Since 1971 defendant has made five connections but has refused, in spite of repeated demands and a state corporation commission order (which plaintiffs applied for in 1974), to make the other 7¼. As a consequence, plaintiffs say they have been unable to sell seven lots causing a loss of $4,375; they have lost a lot of time and expended considerable money trying to minimize their loss by seeking enforcement of the agreement—a loss that at time of trial amounted to at least $3,500.

In its answer, defendant offered two defenses, both conclusions of law: (1) that the corporation commission order was a final judgment and res judicata—a bar to this action; and (2) plaintiffs, through the "device of 'assigning' water connections, wrongfully expanded the area within which said connections were to be placed according to agreement" without making additional payments and they are therefore entitled to no relief.

The parties waived a jury, and, on November 10, 1976, after hearing their evidence, the trial court delayed entry of judgment pending submission of briefs. On March 1, 1978, judgment was rendered in favor of plaintiffs awarding them, as compensation for detriment resulting from the breach, $2,500 for loss of anticipated profits, $2,900 for loss of time and expenses, $1,450 prepaid for the 7¼ connections and $1,000 for attorney's fee.

## II

Snug Harbor first argues that, because our state constitution vests judicial power in the corporation commission to hear and decide certain matters within its jurisdiction, its order in this case is a final judgment and is res judicata with respect to the issues raised by the pleadings in this case.[1]

This legal theory is without merit. If indeed the res judicata concept is applicable to the commission's determination of fact and law in this case—a matter certainly not free from doubt [2]—the judgment operates, under the circumstances of this case, not as a barricade to check plaintiffs but as an estoppel to foreclose defendant's assertion of any fact inconsistent with those it was necessary for the commission to find as a foundation for its order directing defendant to "make the 7¼ water connections owed to" plaintiffs. Implicit in the order is a finding that the parties entered into a valid contract for 12¼ connections for a price plaintiffs have paid and that no valid reason exists why defendant should not immediately perform its contractual obligation— facts not inconsistent with those upon which plaintiffs' cause of action is founded. Plaintiffs, consequently, do not challenge any of the commission's findings. On the contrary, it is upon them they structure their cause of action for damages here.

Broadly speaking, in order that a former action be res judicata with regard to a later one, it has to be shown that the later case involves the same parties and the same subject matter and cause of action.[3] If a different cause of action is subsequently prosecuted, then a kindred doctrine comes into play—estoppel by judgment—barring retrial of any issue actually litigated and determined in the earlier contest.[4] Unlike estoppel by judgment, res judicata encompasses not only matters litigated in the first trial but all matters which could have been.[5] And so, of course, it is not a hindrance to the resolution of matters which could not have been tried in the first instance.[6] Certain it is that the corporation commission has no jurisdiction to determine what detriment might be derived from a contractual breach or to assess the resulting damages, and therefore its order cannot bar this action. *Southwestern Light & Power Co. v. Elk City, supra,* note 2.

## III

Snug Harbor's second contention is that the evidence concerning damages is insufficient to sustain the amount awarded. Defendant points to an observation of the court in *Chorn v. Williams,* 186 Okl. 646, 99 P.2d 1036 (1940) that to be recoverable for breach of a contract damages must be "clearly ascertainable, both in their nature and origin, and . . . the natural and proximate consequence of a breach . .," and to the general rule concerning "lost profits" discussed in *Keener Oil & Gas Co. v. Stewart,* 172 Okl. 143, 45 P.2d 121 (1935), namely, that absent reasonably certain

---

1. *See* Okla.Const. art. 9, § 19.

2. *See United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). *Cf. Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.,* 309 U.S. 4, 60 S.Ct. 465, 84 L.Ed. 1034 (1940), upholding state court decision that a corporation commission rate order was "legislative" in nature and therefore not "res judicata." Nor does the doctrine apply if the commission exceeded its jurisdiction. *See Southwestern Light & Power Co. v. Elk City,* 188 Okl. 540, 111 P.2d 820 (1940), in which the court held that the corporation commission had no jurisdiction to determine the contractual rights of parties and compel their performance. *Cf. Dunbar v. Tulsa Metropolitan Water Auth.,*

Okl., 363 P.2d 145 (1961), where the court decided that the corporation commission did have power to issue a prohibitory order preventing a water cut off even though the water was supplied under a long term contract.

3. *Tilly v. Allied Materials Corp.,* 208 Okl. 433, 256 P.2d 1110 (1953).

4. *Bruce v. Miller,* Okl., 360 P.2d 508 (1960).

5. *Ward v. Ayres,* Okl., 376 P.2d 579 (1962).

6. *Johnson v. Southwestern Battery,* Okl., 411 P.2d 526 (1966).

proof, loss of anticipated profits of a business are usually not recoverable. And so, in the instant case, concludes Snug Harbor, plaintiff Phillips' testimony that the value of seven lots was reduced 50 percent or $625 a lot because of defendant's failure to make the water connections is insufficient to support the award of $2,500 for what the trial court referred to as a "loss of anticipated profits."

■ The law is that once it has been proved that defendant breached the contract plaintiffs are entitled to recover an "amount which will compensate . . . [them] for all the detriment proximately caused thereby . . . ." 23 O.S.1971 § 21. Loss of profits is, of course, recognized compensable detriment,[7] but loss of anticipated profits generally is extremely difficult to prove.[8] Here, designating the $2,500 award to be for loss of "anticipated profits" was inappropriate under the evidence. Plaintiffs' evidence on the subject was, essentially, that without a water connection the land was worth half as much as it would be with one. No attempt was made to lay a foundation for loss of profits as such. That does not mean, however, that the award is necessarily void. As we view the matter, the question remains whether there inheres in the evidence a genre of detriment that will support the $2,500 award in some manner related to the land, either in terms of depressed value or diminished sales.

■ We are not convinced that plaintiffs are entitled to recover the depreciation of their land due to the breach. Troublesome in this regard is the fact that plaintiffs still own the land and its value is subject to restoration as soon as defendant performs. But, regardless of whether or not such depreciation is compensable detriment, there is yet another species of detriment related

to the obstructed sales, namely, plaintiffs' deprivation of the use of the proceeds from the sale of seven lots for five years. Such detriment is compensable as interest at the legal rate. The evidence is that defendant's intransigence prevented the sale of seven lots for $1,250 a piece for five years and six percent simple interest on this amount annually for that period amounts to $2,625 or $125 more than the court awarded. Thus, the first item of damages awarded is supported by sufficient evidence.

■ The second item of damages awarded—$2,900 for loss of time and expense—is likewise recoverable detriment[9] and is supported by adequate evidence. Plaintiff Phillips testified that during the past five years he made numerous telephone calls, wrote many letters, hired a lawyer to invoke the aid of the corporation commission, spent about 600 fruitless hours and $500 car expense showing the property to prospects who declined to buy because of the "water problem." In fact, concluded plaintiff, Ed Wright, president of Snug Harbor, "just practically put me out of business." For all of this, Phillips estimated plaintiffs' loss at $3,500.

It is the uncertainty of whether or not damage has been sustained rather than indefiniteness as to its amount that precludes recovery. *Ash v. Chas. F. Noble Oil & Gas Co.*, 96 Okl. 211, 223 P. 175 (1924). Here, the fact that plaintiffs lost time and incurred expenses as a result of defendant's default is positive. And, testimony regarding the extent of the detriment is definite enough circumstantially to convince us that the amount awarded by the trial court is well within the parameters of reason.

Defendant makes no other complaint about the judgment. It does, however, say that interest may not be awarded on costs, according to *McAlester Urban Renewal*

---

7. *Firestone Tire & Rubber Co. v. Sheets*, 178 Okl. 191, 62 P.2d 91 (1936).

8. *City of Collinsville v. Brickey*, 115 Okl. 264, 242 P. 249 (1925).

9. *St. Louis-San Francisco R.R. v. Freeman*, 82 Okl. 6, 198 P. 298 (1921).

*Auth. v. Hamilton*, Okl., 521 P.2d 823 (1974), and that since 12 O.S.1972 § 938 authorizes the court to award an attorney's fee we ought to fix and award it one. We decline to forecast the eruption of a dispute over taxing of costs and then resolve it if that is what defendant has in mind for us to do. And, for an obvious reason, we reject defendant's request for an attorney's fee award.

## IV

The judgment appealed is therefore approved. Plaintiff is awarded an additional attorney's fee for the defense of this appeal in the sum of $850, and judgment is hereby granted plaintiffs against Snug Harbor on the cash supersedeas bond it filed in this case for amount due under the principal judgment, trial court costs, and the attorney's fee awarded by this court.

Affirmed.

BACON, P. J., and NEPTUNE, J., concur.