## CHICAGO, R. I. & P. RY. CO. v. STATE et al.

No. 21047. Opinion Filed June 21, 1932.

W. R. Bleakmore, John Barry, W. L. Farmer, and Robert E. Lee, for plaintiff in error.

V. R. Biggers, A. A. Criswell, J. Bart Aldridge, and Lynn Adams, for defendants in error.

CULLISON, J. This is an appeal from order No. 4790 rendered by the Corporation Commission of the state of Oklahoma on June 27, 1929, ordering defendant railway company to open and maintain a private crossing across its railway tracks in Seminole county, Okla.

The Seminole Refining Company, Horace Mason, and J. M. Malone. as complainants, instituted proceedings before the Corporation Commission seeking . to compel the Chicago, Rock Island & Pacific Railway Company, defendant, to open and maintain a private farm crossing over defendant's railway.

The record further discloses that at the time defendant's railway was built across the land in controversy it severed said tract of land so as to entitle the owner thereof to a private farm crossing in order that he might have a crossing from one parcel of land to the other parcel of land on either side of said railroad. The land is close to the city of Seminole and defendant has constructed switch yards at the point of said farm crossing.

There had also been transfers made of portions of said land by the original owner. The Seminole Refining Company purchased a portion of said land along defendant's right of way. The land purchased by complainants was some distance from the proposed private crossing, but they claimed to have secured permission from the adjacent owners to cross over said adjoining land and reach the private crossing.

There were public crossings some distance on either side of complainants' property. Defendants closed the private crossing, and complainant instituted the proceedings at bar before the Corporation Commission, seeking an order compelling defendant's railroad to reopen said crossing.

The cause was tried to the Corporation Commission and an order rendered therein directing defendant to reopen said private crossing from which order of the Corporation Commission, defendant appeals to this court.

The parties will be referred to as they appeared before the Corporation Commission.

Defendant's first assignment of error is that the Corporation Commission of the state of Oklahoma is without jurisdiction to adjudicate the rights of individuals to have reopened and maintained a private crossing connecting their lands which have been severed by a railroad right of way.

This question necessitates consideration of the jurisdiction of the Corporation Commission relative to private railroad crossings.

Section 5532, C. O. S. 1921, provides:

"When any person owns land on both sides of any railroad, the corporation owning such railroad shall, when required to so do, make and keep in good repair one causeway or other safe and adequate means of crossing the same."

Complainants contend that under the above section it became the duty of defendant to construct a roadway, or causeway, over its railroad in order that the landowner might go from one parcel of land to the other over defendant's railroad, and that after said crossing had been constructed and other parties purchased property nearby, the Corporation Commission would have authority to compel the railroad company to comply with said section and keep the private crossing open.

We further observe that the Corporation Commission was created by the Constitution of this state and that the framers of the Constitution enumerated the powers and authority given to the Corporation Commission.

Section 18 of article 9 of the State Constitution provides such powers as are given to the Corporation Commission to enforce rates, inspect books and papers of transportation corporations and fix rates to be charged for services rendered.

The question then arises. "Did this grant of power to the Corporation Commission empower the Corporation Commission and give it jurisdiction to render orders relative to either private or public railroad crossing?"

The question of the authority of the Corporation Commission over railroad crossings was extensively reviewed in the case of Atchison, T. & S. F. Ry. Co. v. Corporation Commission of State of Oklahoma, 68 Okla. 1, 170 P. 1156, and at page 5 of said opinion this court makes the following observations as to the powers of the Corporation Commission:

"That the Commission has no jurisdiction, except such as expressly or by necessary implication is conferred upon it by the Constitution, must be admitted. This proposition is now too well settled to require the citation of authorities. The courts, therefore, should be careful and neither attempt to enlarge nor take from the jurisdiction conferred on the Commission. As applied to the subject-matter here, what authority did the people by the Constitution confer upon the Corporation Commission? The whole provision must be construed together, in order to reach a sound and correct conclusion. Had this section ended at the first semicolon after the word 'companies.' then it would appear that the jurisdiction which it claimed in making the order complained of might reasonably appear to have been conferred. But the language following, in a sense, limits the natural import of the language preceding, which reads:

" 'And to that end, the Commission shall, from time to time, prescribe and enforce against such companies in the manner hereinafter authorized, such rates, charges. classifications of traffic. and rules and regulations and shall require them to establish and maintain all such public service facilities and conveniences as may be reasonable and just, which said rates, charges, classifications. rules, regulations and requirements, the Commission may. from time to time. alter or amend.'

"The words, 'and to that end the Commission shall, etc.,' refer to and qualify all the preceding language in this section, granting power and authority to the Commission; that is, it should read:

" 'And to that end the Commission shall have power and authority to supervise, regulate. and control all transportation and transmission companies in all matters relating to the performance of their public duties in regard to rates, charges, classifications of traffic. and rules and regulations. and require them to maintain all such public service facilities and conveniences as may be reasonable and just, and to correct all abuses and prevent unjust discrimination and extortion.'

"By so transposing and reading the language of this section, we get the substance which includes all the power and jurisdiction granted to the Commission; and it will be seen it relates solely to the transportation of persons and their property. or to such intercourse and dealings of the public with such companies which are connected in some way with such transportation.

"It is quite clear that it was not intended by the framers of the Constitution to confer jurisdiction and authority upon the Commission to regulate and enforce the performance of the duties of these companies in all of their various relations with the public. but that its jurisdiction was intended to be limited to the matters pertaining to the performance of their public duties as relate to transportation of persons and property and all dealings and intercourse that have any bearing upon or in any way relate to such transportation."

Said opinion further discussed the matter as to where the power had been lodged relative to such questions as that under consideration and discussed such matters as this on page 6 of the opinion in 68 Okla.:

"The only question is, Where has the power been lodged, if at all and where should it be exercised? It seems that this power should be exercised in a manner that there would be as little confusion as possible and without any conflict of jurisdiction. The enforcement of the performance of all public duties by railroad companies pertaining to the business of transportation can be seen at a glance, by reason of not being confined to any particular locality, but general in its nature, should be lodged exclusively in the Corporation Commission. But, on the other hand, the performance of all such public duties, such as constructing public crossings on section lines, building culverts and bridges, and erecting and maintaining suitable crossings where the track crosses the public streets and the building of suitable bridges and viaducts, where it relates in no way to the transportation of persons or property, and is not necessary to be used by the public in dealing with the railway, should be left in the hands of the local authorities. The people in each community know their needs best; they know better when such improvements should be made, and the character necessary to reasonably and conveniently meet their wants; they are in a position to expeditiously enforce the performance of this public duty. That this construction is the one the people, through the Legislature, have adopted may be reasonably inferred, as is evidenced by section 1432, Rev. Laws 1910, which reads as follows. * * *"

It will be observed that this court in the decision just cited held that the Corporation Commission did not have jurisdiction over the subject of compelling the construction of highways over defendant's railroad.

In order to give the Corporation Commission jurisdiction over certain highway crossings, the Legislature enacted chapter 53 of the Session Laws of 1919, entitled "An Act conferring jurisdiction upon the Corporation Commission over public highway road crossings of railroads, and repealing acts in conflict."

The first section of said act which is section 3491, C. O. S. 1921, is as follows:

"The Corporation Commission is given full jurisdiction over all public highway crossings, where same cross steam or electric railroads or railways within the state of Oklahoma."

Section 4 of said act, which is section 3494, C. O. S. 1921, provides that the Corporation Commission shall have exclusive jurisdiction to determine and prescribe the particular location of highway crossings over railways.

We observe that by said act the Legislature vested the Corporation Commission with jurisdiction over public highway crossings of railroads, but that said act in no way pertains to, or refers to, the matter of private crossings of railroads such as the one under consideration in the case at bar.

The law is well settled that the Corporation Commission has jurisdiction to try and determine only such matters as it is given jurisdiction to try, hear, and determine, and that there is no implication that questions not specifically placed within the jurisdiction of the Corporation Commission can be tried and determined by said Corporation Commission. Where there is no express grant of power and authority to the Corporation Commission to hear and determine the matter, then the Corporation Commission would not, by implication, have jurisdiction to hear and determine said matter.

We further observe that the Corporation Commission was given jurisdiction over public utilities by section 3463, C. O. S. 1921, for the purpose of supervising, fixing, and establishing rates, rules, and regulations affecting service, etc., of said public utility.

In the case of Smith v. Corporation Commission, 101 Okla. 154, 225 P. 708, at page 256 of the opinion, this court held:

"It has jurisdiction to supervise, regulate, and control public utilities in so far as their public duties are concerned, and to establish rates to be charged by them for a public service, and if rates in excess of those established are collected, it has the authority to adjust controversies between the utility and the consumer by determining the amount of refund due the consumer, and to whom the same should be paid, and it may enforce the payment of such overcharge in the same manner that fines and penalties imposed by it are authorized to be collected by law, and when such overcharge is collected it shall be by the Commission paid to the parties to whom it is due. Its jurisdiction is limited to those controversies wherein the rights of a public utility and the patrons thereof are involved. It has no power or jurisdiction to adjudicate differences between private litigants of purely private matters between a utility and a citizen."

In the above decision this court held that the Corporation Commission had jurisdiction as to all matters where the public and the utility were involved, but that the Corporation Commission had no power or jurisdiction to adjudicate differences which are purely private between a utility and a citizen. The line of demarcation being that

so long as the matter in controversy is one that affects the public, then the Corporation Commission would have jurisdiction to consider the same, but where said matter in controversy is a private matter merely between the company and the individual then the same becomes a private matter between the corporation and the individual and not a public concern. and not being of public concern, the Corporation Commission does not acquire jurisdiction thereof.

Our decision of the first assignment of error having determined said appeal, we do not consider it necessary to discuss the other assignments of error presented.

After fully considering said cause, we hold that the Corporation Commission was without jurisdiction and authority to hear said cause and render order No. 4790 therein.

The order of the Corporation Commission is vacated, with directions to dismiss the same.

RILEY, HEFNER, SWINDALL, and ANDREWS, JJ., concur. McNEILL, J., concurs in conclusion. KORNEGAY, J., dissents. LESTER, C. J., and CLARK, V. C. J., absent.

---

KORNEGAY, J. (dissenting). I desire to register a dissent against the conclusions reached in the opinion of the majority in this case. The concluding part of the opinion is as follows:

"After fully considering said cause, we hold that the Corporation Commission was without jurisdiction and authority to hear said cause and render order No. 4790 therein."

It appears from the opinion that there had existed a crossing near Seminole, Okla., across the tracks of the Chicago, Rock Island & Pacific Railway Company. Just when the crossing was put in and how long it had existed is not disclosed by the opinion. An individual at one time owned the land on both sides of the road where the crossing was. and the complainant, Seminole Refining Company, bought a part of the land and claimed the right to go from its place of business to this crossing by permission of adjacent owners. It further discloses that there were public crossings some distance on either side of the complainant's property. It further appears in the opinion that the Corporation Commission made an order directing the railway company to reopen the crossing.

The opinion cites section 18, art. 9, of the Constitution, and also section 5532, C. O. S. 1921, and the case of A., T. & S. F. Ry. Co. v. Corp. Comm. of Okla., 68 Okla. 1, 170

P. 1150. and also section 3491, C. O. S. 1921, and also section 3494 and section 3463, and the case of Smith v. Corp. Comm., 101 Okla. 254, 225 P. 708, and concludes by ordering the dismissal for want of jurisdiction in the Corporation Commission to hear the matter.

It seems to me that the authority claimed by the Corporation Commission must be lodged somewhere in any well regulated community. The railroad with its line of road does, in most every way, preclude passage of persons desiring to get from one side to the other of its steel barrier. Evidently recognizing the necessity for it, at one time a crossing was put in. Later, according to this opinion, the railroad company saw fit to close it up. The refining company made arrangements with the owners of the adjacent land to get to and use this crossing. As a public utility proposition. there may be something in the case-made to call for a dissertation thereon, but as it appears now. it is a question of getting across the railroad tracks.

It is well to keep the Corporation Commission within bounds, but at the same time it is well to keep the railroad company within bounds and to look out for the public, whether it be all of the public, or part thereof, that have occasion to get across the lines. Most accidents occur at crossings, very frequently resulting in disaster to the lighter vehicle in its entirety, but occasionally causing the most serious of wrecks, involving claims for property damage and claims for personal damage, both by the passengers, and also by the person injured at the crossing.

Prior to statehood there had been grants of railroad rights of way that were being used by the Missouri, Kansas & Texas Railroad. and by the Frisco, on the Indian Territory side, the Santa Fe and Rock Island being the dominant ones on the west side. The courts were established in 1889, and the first presidential election thereafter was in 1892, resulting in the Democrats winning. The general attorney of the M., K. & T. road, already so full of work that he required assistants. was made the United States attorney, for which office he required assistants. A change in the political wheel occurred in 1896, and the Republicans came into power. Immediately the general attorney of the Frisco. already overworked, was made the United States attorney for the Indian Territory. On the west side, through the medium of pass propaganda, members of the Legislature were very frequently enabled to ride without cost to themselves. Such had been the experience of the people of both sides of the state that there was

a positive demand for a commission or board that would be elective with power to regulate the railroads in an administrative capacity. as well as somewhat on a legislative order. The Corporation Commission measure was the result of that demand. Probably it was taken from Virginia with very little amendment.

The Constitution, as I view it, is broad enough to give to the Corporation Commission jurisdiction to order the crossing restored in the exercise of the superintendence therein conferred. Such for a while were the holdings. Later the case that is cited in the majority opinion came up from Guthrie, wherein an expensive viaduct was ordered to be put in, and there is also what is generally referred to as the "Lynn-Lane Case" of the St. L.-S. F. Ry. Company v. Love 29 Okla. 523, 118 P. 259, a case wherein from an Indian tribe a right of way had been gotten without compensation under the treaty of '66. There was some recession from the idea of the Corporation Commission having the authority to prescribe the form of crossing, the court going on the idea that it was a condemnation of property without pay to require the company to provide a crossing, and the court practically held that in the grant secured from the Indian Nation there was no reservation of a right to cross the tracks, and owing to the fact that the money for the right of way had not been paid the court reached this conclusion:

"Under the exercise of the right of eminent domain, the public is entitled to lay its highway across plaintiff's right of way, and under the authority of the police power, if the facts exist. the Corporation Commission. has power to fix the kind and character of crossing to be established. The jurisdiction and duties. as well as the principles involved, are separate and distinct. The highway must first be established and opened by the local authorities. and then the jurisdiction vested in the Corporation Commission attaches to determine the character of crossing to be built."

This case was decided in 1911. The announcements contained in extracts in this opinion seem to be carried out in the case relied on and quoted from, viz.. A., T. & S. F. Ry. Co. v. Corp. Comm., 68 Okla. 1, 170 P. 1156. That opinion was filed on the 15th of December. 1914. and rehearing denied on February 26, 1918.

The Legislature, evidently recognizing that it was time for it to come to the relief of the Corporation Commission pursuant to the statutes, in 1913 gave to the Commission power to punish for contempt. See section 3464. C. O. S. 1921. Later. after the opinion in the last above named case became final, it enacted chapter 53, Session Laws 1919, the first four sections of which are as follows:

"Sec. 1. The Corporation Commission is given full jurisdiction over all public highway crossings, where same cross steam or electric railroads or railways within the state of Oklahoma.

"Sec. 2. The expense of construction and the maintenance of public highway grade crossings shall be borne by the railroad or railway company involved. For over-grade or undergrade public highway crossings over or under steam or electric railroad or railway, the assignment of cost and maintenance shall be left to the discretion of the Corporation Commission; but in no event shall the city. town, or municipality be assessed with more than fifty per cent. (50%) of the actual cost of such overgrade or undergrade crossings.

"Sec. 3. In all actions arising before the Corporation Commission the same rules as to procedure, notice of hearing and trial, and as to appeals to the Supreme Court, shall be applicable as are prescribed for said Commission, as to transportation companies generally; and the same rules applicable to the enforcement of other orders of the Corporation Commission as to transportation companies shall be applicable to the enforcement of any order or orders made hereunder.

"Sec. 4. The Corporation Commission shall have exclusive jurisdiction to determine and prescribe the particular location of highway crossings. for steam or electric railways, the protection required, to order the removal of all obstructions as to view of such crossings, to alter or abolish any such crossings. and to require. where practicable a separation of grade at any such crossing, heretofore or hereafter established."

The same session enacted a law to compel fencing of rights of way, and conferred jurisdiction upon the Commission as announced in section 3496. C. O. S. 1921. Prior to this time, however, the Supreme Court. in opinions that do not seem to have been noticed in the present court opinion, had held that the original sections of the Constitution conferred full jurisdiction on the Corporation Commission, which is reflected in the case of M., K. & T. Ry. Co. v. State. 26 Okla. 270, 109 P. 65, opinion filed May 10, 1910. It appears from that opinion that an opinion was filed on the 26th of April, 1908, affirming such jurisdiction, and the railway company had filed an application for rehearing. At page 271 of 26 Okla., the court says:

"The purpose of this proceeding is to secure a farm crossing for a man who needs

it, and as far as possible his convenience should be consulted in its place of location. As long as this case pends here, he is denied this necessity; hence, to secure this end the order is made. Under these circumstances, the case is remanded to the Corporation Commission, with directions to have the place of the crossing definitely designated and determined by its official engineer, and the company will then, under its proffer and this judgment, construct a crossing suitable for the uses intended."

An inspection of the record in that case shows the Corporation Commission's jurisdiction was attacked and sustained.

The 1910 Revision carries with it, under the head of Corporation Commission, art. 9, sec. 18, of the Constitution, a citation which is as follows:

"Railroad crossings. This section construed. Under it, Commission has jurisdiction to determine necessity and propriety for crossing, and place and manner of its being made. After this is done, proceedings must be had as provided by law of eminent domain. (See sec. 1349, subd. 6) Ry. Co. v. Richardson, Judge, et al., 25 Okla. 640, 106 P. 1108. Following 22 Okla. 106, 98 P. 330."

The case referred to, A., T. & S. F. Ry. Co. v. Corp. Comm., 22 Okla. 106, 98 P. 330, opinion filed Sept. 11, 1908, and especially the case of M., K. & T. Ry. Co. v. Richardson, 25 Okla. 640, 106 P. 1108, is so plain that the Constitution conferred power on the Corporation Commission to handle the subject of crossing that reference thereto suffices. It quotes a Texas case so holding, under a legislative act pursuant to constitutional provision nothing to compare with ours in extent, and also a case from Virginia on the subject, from which state a large part of our Corporation Commission provision was borrowed.

The present opinion seems to be in conflict with Gibbons et al. v. M., K. & T. Ry. Co., 142 Okla. 146, 285 P. 1040, decided March 11, 1930, an extract therefrom being as follows:

"In the present case, as we have already seen, the Legislature authorizes and gives the Corporation Commission jurisdiction to determine and prescribe the particular location of highway crossings and to order the removal of all obstructions as to view of such crossings; and we see no constitutional objection to this delegation of authority."

Under these conditions, I think that the Corporation Commission's jurisdiction in this matter should not be denied, and that it should be permitted to carry out its constitutional and statutory functions.